# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **LINDA L. FAULKNER, an individual,**<br><br>Plaintiff,<br><br>vs.<br><br>**DOUGLAS COUNTY, NEBRASKA, a political subdivision of the State of Nebraska,**<br><br>Defendant. | 8:15CV303<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Summary Judgment (ECF No. 26) submitted by Defendant Douglas County, Nebraska, a Political Subdivision of the State of Nebraska ("Douglas County"). For the reasons discussed below, the Motion will be granted.

## FACTS

The following facts are those stated in the parties' briefs, ECF Nos. 27, 36, and 38, supported by pinpoint citations to evidence in the record, ECF Nos. 28, 29, 30 and 37, and admitted or not properly resisted by the opposing party as required by NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

---

[1] *See* NECivR 56.1(b)(1) (effective December 1, 2015):
The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

At all relevant times, Douglas County operated the Douglas County Correctional Center ("DCCC") through the Douglas County Department of Corrections ("DCDC"), and Dr. Mark Foxall ("Foxall") was DCDC's Director.

Plaintiff Linda L. Faulkner ("Faulkner") is an African-American female, who was age 56 at the time of the filing of her Complaint in 2015. Faulkner worked at the DCCC from April 22, 2003, to January 31, 2014, and at all relevant times was a Correctional Officer II ("COII").  DCDC's job description for a COII included among the primary job duties and responsibilities the maintenance of custody and control of inmates, including the restraint of combative or disruptive inmates through use of necessary force.  The job description further provided that officers are required to physically engage inmates, and must remain physically fit and without medical conditions that would prevent them from subduing or restraining inmates who pose a threat to officers or other inmates.

The DCDC mandated that those holding the position of COII meet specific job-related physical requirements, including the ability to stand, walk, sit, climb stairs, run, kneel, stoop, crouch, and move quickly from kneeling to standing positions.  The DCDC also required that COIIs maintain the ability to lift, grip, push, and pull certain minimal weights and forces, including the ability to lift twenty pounds frequently, lift up to 350 pounds occasionally as part of a team lift, push up to 100 pounds and pull up to 80 pounds occasionally, and push/pull up to 40 pounds on a frequent to occasional basis.

Faulkner was aware that inmate contact was a COII a job requirement, as was the ability to intervene physically to stop fights between inmates, and the ability to restrain combative persons.

2

On August 6, 2012, Faulkner was involved in an inmate altercation. She suffered a left shoulder strain, hand contusion, contusion of the lumbar region, and a lumbar strain. The incident was reported to the Nebraska Workers Compensation Court as an occupational injury. Faulkner received medical care, worked intermittent light duty[2] from August 12 to 20, and was released to full work duty with no limitations on August 23, 2012. Faulkner was involved in another inmate altercation on September 4, 2012, resulting in another report of occupational injury to the Nebraska Workers Compensation Court, in which she alleged that she injured her upper back, left face, and shoulder. On October 26, 2012, Faulkner underwent left shoulder surgery and was absent from work until on or about November 26, 2012, when she was released by her treating physician, Dr. Jonathon E. Buzzell ("Dr. Buzzell"), with permission to perform sedentary work with a ten-pound lifting restriction.

On January 16, 2013, Dr. Buzzell prescribed physical therapy for Faulkner, because she suffered from cervical spondylosis with radiculopathy. On January 17, 2013, Dr. Buzzell noted that Faulkner was experiencing soreness in her neck, and diminished cervical range of motion. Dr. Buzzell also noted that x-rays revealed degenerative disc disease in Faulkner's cervical spine, and he referred her to a spinal surgeon, Dr. Bradley S. Bowdino ("Dr. Bowdino"). Dr. Bowdino ordered an MRI that

---

[2] Foxall defines "light duty" through reference to DCDC Policy No. 1.3.108, ECF No. 28-5, Page ID # 264-67, and Fraternal Order of Police, Lodge No. 8, Collective Bargaining Agreement ("CBA"), ECF No. 28-4, Page ID # 256-57, 260-61. The documents indicate that the purpose of temporary light duty is to permit union and nonunion personnel who are temporarily unable to perform all assigned duties due to injury or illness an opportunity to work in specified light-duty positions. Both documents limit light duty to a maximum of 180 days. Priority is given to individuals with work-related injuries. ECF No. 28-5, Page ID # 265. Certain positions at DCCC are considered light duty positions. *Id.* at Page ID #266.

3

revealed multilevel bilateral neural foraminal stenosis and degenerative disc disease in Faulkner's cervical spine. On or about April 11, 2013, another physician, Dr. Alicia Feldman ("Dr. Feldman"), met with Faulkner and noted that Faulkner would undergo an epidural steroid injection in her cervical spine, administered by Dr. James Devney ("Dr. Devney"), and could benefit from a functional capacity exam ("FCE") to determine permanent work restrictions.

On April 24, 2013, Dr. Buzzell noted that Faulkner's shoulder had reached maximum medical improvement and that Faulkner's work was not limited as to her shoulder. On May 3, 2013, Dr. Feldman released Faulkner to return to work with "light duty" restrictions, and referred Faulkner for an FCE to determine her permanent work restrictions related to her cervical spine. On May 20, 2013, Faulkner saw Neal Wachholtz, P.T., ("Wachholtz") for an FCE. Based on the FCE, Faulkner was given the following permanent restrictions: Lifting objects to shoulder level restricted to 20 pounds on an occasional basis and ten pounds on a frequent basis; overhead lifting restricted to 15 pounds or less on an occasional basis; no prolonged or repetitive overhead work; and no pushing or pulling greater than 40 pounds. Dr. Feldman approved those permanent work restrictions on May 28, 2013.

Faulkner continued to work light duty until July 6, 2013, when Foxall removed Faulkner from light duty status, concluding that she used the maximum allowable number of days of light duty pursuant to the CBA[3].

---

[3] The relevant provisions in the Collective Bargain Agreements between Douglas County and the F.O.P. Lodge No. 8 for the period of July 1, 2010, to June 30, 2013, ECF No. 28-4, Page ID 254-57, and

On August 27, 2013, Foxall gave Faulkner a letter notifying her that her permanent FCE limitations were inconsistent with the physical requirements of a COII position, and that the medical information provided to DCDC indicated she was unable to perform the essential functions of the job. Foxall suggested that Faulkner advise him if she believed some type of accommodation would allow her to perform the essential functions of the COII position, or some other position with Douglas County.

On August 28, 2013, the Douglas County workers compensation coordinator sent Faulkner a letter stating that Douglas County no longer would pay her temporary total disability payments or provide medical treatment, because Faulkner reached maximum medical improvement for her work-related shoulder injury, and because her treating physicians agreed her cervical spine condition was not work-related.

In September 2013, Faulkner sought care from Dr. Matthew P. West ("Dr. West") due to worsening neck pain. He referred her to Dr. John Hain ("Dr. Hain") to discuss surgical options. Dr. Hain recommended an anterior cervical discectomy and fusion at C5-C7.

On October 7, 2013, Faulkner attended a Douglas County Employee Review Committee meeting, represented by her workers compensation attorney. At the meeting, Faulkner asked to be assigned to DCDC central control or lobby indefinitely, or with the Douglas County Department of Motor Vehicles, as an accommodation for her

---

the period of July 1, 2013, to June 30, 2017, *id.* at Page ID 258-261, are the same. Both COBs provide: "Light duty assignments may be made for a period of up to 90 calendar days. An additional 90 days may be available by submitting a written request to the Directors or his/her designee." *Id.* at Page ID 256, 260.

medical status. On October 11, 2013, Faulkner underwent the anterior cervical discectomy and fusion surgery as recommended by Dr. Hain.

On January 2, 2014, Faulkner filed a workers compensation claim in the Nebraska Workers Compensation Court.

On January 22, 2014, Foxall denied Faulkner's request for an extension of her injured-on-duty ("IOD") benefits, despite a recommendation for the extension by the DCDC's IOD Committee. Foxall relied on the opinions of two physicians, Dr. Buzzell and Dr. Chris Cornett ("Dr. Cornett"), that Faulkner's cervical spine complaints were not work-related.

On January 23, 2014, Foxall advised Faulkner that DCDC would conduct a hearing on January 31, 2014, to determine whether Faulkner should be separated from employment due to disability. At that time, Faulkner had received light duty assignments at DCDC for a total of 1,296.83 hours[4]. On January 31, 2014, the hearing took place. Faulkner was asked whether she could perform the essential duties of a corrections officer, and she replied, "Not right now." Faulkner's employment with DCDC was terminated. No positions were available at Douglas County Department of Motor Vehicles.

On February 3, 2014, Faulkner began physical therapy to improve her neck function. On February 18, 2014, Brianne J. Walbrecht, P.T., D.P.T., recommended that

---

[4] The CBA limits light duty assignments for temporary disability to a maximum of 180 calendar days. ECF No. 28-4, Page ID 256-57, 260-61. The Court infers that some calendar days Faulkner worked on light duty status were less than eight work hours in length.

Faulkner cease physical therapy due to the increased pain suffered with attempts to improve her soft tissue mobility.

On April 8, 2014, Faulkner met with Dr. Meryl A. Severson ("Dr. Severson") in connection with a social security disability claim. Dr. Severson opined that Faulkner's degenerative cervical disc disease was permanent and that she likely had received the maximum benefit of medical treatment. He also concluded that Faulkner was unable to lift or carry more than ten pounds, and unable to work with her arms above shoulder level.

On April 22, 2014, Dr. Hain ordered another FCE for Faulkner. The second FCE conducted on April 24, 2014, by Terry Nelson, P.T. ("Nelson"), restricted Faulkner's lifting, pushing, and pulling activities to levels below the DCDC standards for COIIs. On July 29, 2014, Dr. Hain noted that he adopted the FCE findings, and that Faulkner had achieved maximum medical improvement. On August 19, 2014, Dr. Hain stated that Faulkner's permanent restrictions were those outlined in the April 24, 2014, FCE.

Faulkner's workers compensation action against Douglas County went to trial on January 16, 2015. The Workers Compensation Court judge determined that Faulkner's neck injury was not work-related.

On August 17, 2015, Faulkner brought this action alleging that Douglas County discriminated against her on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1101, *et seq.* ("NFEPA"); that Douglas County retaliated against her in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*

7

("ADA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and NFEPA; that Douglas County discriminated against her in violation of the ADA and NFEPA by refusing the make accommodations for her disabilities; and that Douglas County discriminated against her on the basis of her age, in violation of the ADEA and NFEPA[5].

## STANDARD OF REVIEW

"Summary judgment is appropriate when, construing the evidence most favorably to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Crozier v. Wint,* 736 F.3d 1134, 1136 (8th Cir. 2013) (citing Fed. R. Civ. P. 56(c)). "Summary Judgment is not disfavored and is designed for every action." *Briscoe v. Cnty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) *cert. denied*, 132 S. Ct. 513 (2011)) (internal quotation marks omitted). In reviewing a motion for summary judgment, the Court will view "all facts and mak[e] all reasonable inferences favorable to the nonmovant." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.,* 703 F.3d 1104, 1107 (8th Cir. 2013). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving

---

[5] Although Faulkner refers to statutes within NFEPA, *see* Complaint, ECF No.1 at Page ID 9-11, the Court infers that she means to make reference to the Nebraska Age Discrimination in Employment Act, Neb. Rev. Stat. § 48-1001 *et seq.,* which, like the ADEA, prohibits discrimination on the basis of age.

party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Briscoe,* 690 F.3d at 1011 (quoting *Torgerson*, 643 F.3d at 1042) (internal quotation marks omitted). "'[T]he mere existence of some alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012) (quoting *Torgerson*, 643 F.3d at 1042) (internal quotation marks omitted). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue for trial"

9

and summary judgment is appropriate. *Torgerson*, 643 F.3d at 1042 (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)) (internal quotation marks omitted).

## DISCUSSION

### I. Sex Discrimination under Title VII and NFEPA

Because Faulkner has presented no direct evidence of discrimination on the basis of her sex, her Title VII claims of discrimination must be evaluated under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination under the *McDonnell Douglas* framework, "a plaintiff must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). Once the prima facie case is established, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Floyd-Gimon v. Univ. of Ark. for Med. Sciences ex rel. Bd. of Trustees of Univ. of Ark.*, 716 F.3d 1141, 1149 (8th Cir. 2013). If the defendant does so, the plaintiff then has the burden of proving that the defendant's proffered reason is a pretext for discrimination. *Id.*

Similar to Title VII, NFEPA prohibits employers from taking adverse action against an individual "because of such individual's . . . sex[.]" Neb. Rev. Stat. § 48–1104(1). NFEPA "is patterned after Title VII," and "it is appropriate to consider federal court decisions construing the federal legislation" when considering questions under

10

NFEPA. *City of Fort Calhoun v. Collins,* 500 N.W.2d 822, 825 (Neb. 1993); see also *Orr v. Wal–Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002).

To prevail on her claim of sex discrimination under Title VII or NFEPA, Faulkner must identify similarly situated males who were afforded preferential treatment by Douglas County.  See *Bennett*, 656 F.3d at 819 ("To create an inference of racial discrimination based on disparate treatment of fellow employees, the plaintiffs must show that they were treated differently than similarly situated persons who are not members of the protected class."); *Price*, 664 F.3d at 1191.  "The test to determine whether individuals are similarly situated is rigorous and requires that the other employees be similarly situated in all relevant respects before the plaintiff can introduce evidence comparing herself to the other employees."  *Bennett*, 656 F.3d at 819 (quoting *Chism v. Curtner*, 619 F.3d 979, 984 (8th Cir. 2010)) (internal quotation marks omitted). Although this standard is rigorous, the "similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone."  *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1085 (8th Cir. 2013) (quoting *Chaney v. Plainfield Healthcare Ctr.,* 612 F.3d 908, 916 (7th Cir. 2010) (internal quotation marks omitted)).

In Falkner's Complaint, ECF No. 1, Page ID 5, she lists the names of seven men whom she contends were similarly situated to her, but given more favorable treatment by DCDC.  In the Brief in Support of Defendant's Motion for Summary Judgment, ECF No. 27, Page ID 117-118, Douglas County provided details of its actions taken with

11

respect to the seven male employees, and four other male employees whom the Court infers were identified during discovery as potential comparators.[6]

The first and second male comparators had surgery similar to Faulkner's, but were released back to work by their physicians with no medical restrictions and worked without restrictions or accommodations. The third male comparator had no injuries or restrictions and had never been assigned to light duty. The fourth male comparator was released back to work with no medical restrictions and worked full duty without restrictions or accommodations until his termination for unrelated reasons. The fifth male comparator was released back to work with no restrictions and worked full duty without restrictions or accommodations. The sixth male comparator was released back to work with no medical restrictions and worked full duty without restrictions or accommodations until his retirement, though Faulkner notes that he received light duty assignments for a longer period of time than she was allowed. The seventh, eighth, ninth, tenth, and eleventh male comparators were terminated from employment because they could not perform the duties of a corrections officer.

Faulkner contends that Foxall should have allowed her to work light duty indefinitely at the DCDC Central Control or housing unit "Bubble" stations where inmate contact was not required, or that Foxall should have assigned her to the DCDC lobby or night shifts indefinitely, as accommodation for her disability. No male comparator was given such an accommodation. Although there appears to be an issue as to whether

---

[6] The facts asserted by Douglas County concerning the male comparators are supported by pinpoint citations to the evidentiary record, and there is no genuine dispute as to the facts summarized herein.

one male comparator was allowed to work more hours on light duty than Faulkner was afforded by Foxall, that issue of fact is not material because there is no suggestion that Foxall was ever informed that the male comparator had permanent medical restrictions inconsistent with the duties of a correctional officer. In contrast, in mid-2013, Foxall was informed that Faulkner's work restrictions related to her cervical spine were permanent, and those physical limitations were inconsistent with the essential functions of a COII. Although Faulkner continued to receive medical treatment for her cervical spine condition later in 2013, and after her termination, there is no evidence that Foxall was ever informed that further medical treatment might allow Faulkner to regain the physical ability to perform essential functions of her job, nor did she regain such ability.

Construing all facts in a light most favorable to Faulkner, she has not shown that any similarly situated male comparators were treated more favorably than she was treated; she has not established an inference of discrimination; and her claims of sex discrimination under Title VII and NFEPA will be dismissed.

## II.  Retaliation under ADA, ADEA, and NFEPA

In Count II of Faulkner's Complaint, ECF No. 1, Page ID 7-8, she notes that Title VII, the ADA, the ADEA, and NEFPA all prohibit employers from discriminating against individuals who have opposed practices made unlawful under the acts, or who have made charges or participated in investigations under the acts. *Id.* (citing 42 U.S.C. § 2000e-3(a), 42 U.S.C. § 12203, 29 U.S.C. § 623(d), and Neb. Rev. Stat. § 48-1114).

Her factual allegations in Count II are vague and conclusory, however, and would be insufficient to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See C.N.*

13

*v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347,* 591 F.3d 624, 629–30 (8th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In her Brief in Opposition to Defendant's Motion for Summary Judgment, ECF No. 36, Faulkner appears to abandon her retaliation claim, and addresses only the Defendant's arguments relating to her claims based on disability, age, and sex. *Id.* at Page ID 1414-1418. The undisputed evidence demonstrates that Faulkner was terminated from employment by Douglas County because of her disability, and for no other reason. Accordingly, her claim based on alleged retaliation will be dismissed.

### III. Failure to Accommodate Disability under ADA and NFEPA

A plaintiff seeking to recover under the ADA must establish a prima facie case of discrimination, that is: "(1) an ADA-qualifying disability; (2) qualifications to perform the essential functions of her position with or without reasonable accommodation; and (3) an adverse employment action due to her disability." *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010) (citing *Finan v. Good Earth Tools, Inc.,* 565 F.3d 1076, 1079 (8th Cir. 2009)). The burden then shifts to the employer to show a nondiscriminatory reason for the adverse action and then back to the plaintiff to show that the articulated reason is merely a pretext for discrimination. *Young v. Warner-Jenkinson Co. Inc.*, 152 F.3d 1018, 1021 (8th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03 (1973)). "The plaintiff retains at all times the ultimate burden of proving that the adverse employment action was motivated by intentional discrimination." *Id.*

NFEPA also provides that it is unlawful for an employer to discharge or discriminate against an individual because of such individual's disability. Neb. Rev. Stat. § 48-1104(1). When applying NFEPA to cases involving disability, the Nebraska Supreme Court follows the same analysis as used by federal courts in cases brought pursuant to the ADA. See *Father Flanagan's Boys' Home v. Goerke*, 401 N.W.2d 461, 464 (Neb. 1987). The key inquiry is whether the individual's condition inhibits her ability to perform her job safely and efficiently. *IBP, Inc. v. Sands*, 563 N.W.2d 353, 358 (Neb. 1997).

To succeed in a failure-to-accommodate claim, a plaintiff "must establish both a prima facie case of discrimination based on disability and a failure to accommodate it." *Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 905 (8th Cir. 2015).

Here, it is undisputed that Faulkner had a disability and that her employment was terminated due to her disability. It is also undisputed that she could not perform the essential functions of a COII position without accommodation. She contends that a reasonable accommodation would have been for Foxall to have permitted her to work indefinitely in light-duty assignments without inmate contact, or in the DCDC lobby, or on night shift positions. The undisputed evidence shows, however, that officers assigned to lobby and night shift positions still must be able to perform the essential physical duties of a correctional officer, including the ability to restrain offenders or stop disturbances with use of force. Foxall Deposition, ECF 28-2, Page ID 181 (22:8-16) and Page ID 197 (38:4-15). With respect to light-duty assignments not involving inmate contact, the CBA gives priority for such assignments to officers with temporary

disabilities resulting from on-the-job injuries. The CBA gives secondary priority for such positions to officers with temporary disabilities resulting from illnesses or injuries that are not job related. The CBA provides:

> While this policy is intended to benefit the employees of the Department during short-term illnesses and injuries, it is not intended for long-term or life long problems. Employees who request or are assigned light duty must have a reasonable expectation or returning to fully [sic] duty status as described in their respective job descriptions, within the maximum 180 days allowed under this policy.

CBA, ECF No. 28-4, Page ID 257, 261

The U.S. Court of Appeals for the Eighth Circuit has held that "an employer need not reallocate or eliminate essential functions of a job to accommodate a disabled employee." *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 950 (8th Cir. 1999). Nor is an employer required to reassign existing workers to assist a disabled worker in the performance of essential duties. *Dropinski v. Douglas County*, 298 F.3d 704, 709-10 (8th Cir. 2002). "Under the ADA, an accommodation that would cause other employees to work harder, longer, or be deprived of opportunities is not mandated." *Rehrs v. Iams Co.*, 486 F.3d 353, 357 (8th Cir. 2007). "The ADA does not require that [an employer] take action inconsistent with the contractual rights of other workers under a collective bargaining agreement." *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1114 (8th Cir. 1995).

Douglas County was not required to eliminate the essential functions of the COII position in order to accommodate Faulkner's disability, nor was it required to violate the CBA. The accommodations Faulkner suggested would have required Douglas County

16

to take one or both of these measures. As a matter of law, Faulkner's suggested accommodations were not reasonable and would have created an undue burden for Douglas County. Although there is ample evidence in the record to support a conclusion that Douglas County engaged in an interactive process with Faulkner to explore whether reasonable accommodations could be made for her disability, as in *Dropinski*, "any discussion concerning the interactive process under these facts is superfluous." 298 F.3d at 710.

Because Faulkner could not perform the essential functions of a COII, and because the accommodations she suggested were not reasonable and would have placed an undue burden on Douglas County, she has not presented a prima facie case of discrimination under the ADA or NFEPA, and her claim based on a failure to accommodate her disability in violation of these acts will be dismissed.

### IV. Age Discrimination under ADEA and NADEA

The ADEA makes it "unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The *McDonnell Douglas* framework applies. *Rahlf v. Mo–Tech Corp.*, 642 F.3d 633, 637 (8th Cir. 2011). In order to establish a prima facie case under the ADEA, [a plaintiff] must show: (1) he is over 40; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) substantially younger, similarly-situated employees were treated more favorably. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010).

17

Similarly, the Nebraska Age Discrimination in Employment Act ("NADEA") prohibits employers from discriminating against employees because of age. Neb. Rev. Stat. § 48–1001 *et seq.* Nebraska courts look to cases interpreting the ADEA for guidance in cases arising under the NADEA. *Allen v. AT&T Technologies*, 423 N.W. 2d 424, 428 (Neb. 1988).

If a plaintiff establishes a prima facie case of age discrimination, the burden of production shifts to the defendant to "articulate a legitimate, nondiscriminatory reason" for its action. *Rahlf,* 642 F.3d at 637. If the defendant does so, the plaintiff must show that the proffered reason was pretext for discrimination. At all times, the plaintiff bears the ultimate burden of persuasion that "age was the 'but-for' cause" of the adverse employment action. *Rahlf*, 642 F.3d at 637; *see also Gross v. FBL Fin. Servs.*, Inc., 557 U.S. 167, 176 (2009)).

Faulkner's age discrimination claim fails for the same reason her sex discrimination claim fails, *i.e.*, she has not provided any evidence that younger employees, similarly situated to her in all relevant respects, received favorable treatment.

In addition to the male comparators discussed above, who were not similarly situated to Faulkner, she names one female employee in her forties whom Faulkner contends was permitted to work light duty assignments longer than Faulkner was allowed to do so. It is undisputed that the female employee ultimately was released by her physicians to work with no restrictions, and there is no evidence that Foxall was

informed that the female comparator had permanent medical restrictions inconsistent with the duties of a correctional officer.

Construing all facts in a light most favorable to Faulkner, she has not shown that any similarly situated younger comparators were treated more favorably than she was treated; she has not established an inference of discrimination; and her claims of age discrimination under ADEA and NADEA will be dismissed.

## CONCLUSION

The Eighth Circuit Court of Appeals repeatedly has said that "the employment–discrimination laws have not vested in the federal courts the authority to sit as super–personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 781 (8th Cir. 1995).

Faulkner has not met her burden of demonstrating that she was qualified for the position of COII, or that she could meet her employer's legitimate expectations. Douglas County articulated a legitimate, non-discriminatory reason for its actions, and Faulkner has not demonstrated that its reason was pretext for discrimination on the basis of her sex, age, or disability–nor pretext for retaliation against her for engaging in protected activity. Accordingly, the Motion for Summary Judgment will be granted.

IT IS ORDERED:

1.  The Motion for Summary Judgment, ECF No. 26, submitted by Defendant Douglas County, Nebraska, is granted;

2. The Plaintiff's Complaint, ECF No. 1, is dismissed, with prejudice; and

3. A separate Judgment will be entered.


Dated this 22nd day of December, 2016.

> BY THE COURT:
>
> s/Laurie Smith Camp
> Chief United States District Judge